Our final case for today is Mendoza-Solis v. Attorney General Sessions. Mr. Alnimer. Good afternoon, Your Honors. May it please the Court, Counsel. My name is Ahmed Alnimer, and I am here on behalf of Petitioner Jose Mendoza-Solis. With the Court's permission, I would like to reserve three minutes for rebuttal. We are here today to request that this Court reverse and remand the denial of Mr. Mendoza's cancellation of removal relief because the Petitioner's due process rights were violated. This Court has jurisdiction to hear this claim under Section 1252 of the United States Code, which states that appellate courts have jurisdiction to review a decision made by the Board of Immigration Appeals denying cancellation of removal if the Petition presents a legal or constitutional question. Here, Petitioner argues his due process rights were violated because he was not afforded a fair and full trial. Section 1229 authorizes the immigration judge to interrogate and cross-examine the witness. However, this is not without limits. Section 1229 also requires the immigration judge to be a neutral fact-finder. The immigration judge in the Mendoza hearing abandoned that role as his decision was already made. Well, I don't know. I mean, he expresses impatience with the fact that there's been a remand. But he says, but we're going to have to do it all over again in June, and then they do. And he takes the trouble to get Mr. Mendoza Solis' mother there, you know, gets the extra testimony. You know, once he buckles down to the remand, it looks to me like that's what he does. I mean, you can't really say the due process is violated every time a judge makes some kind of testy remark. That's correct, Your Honor. I mean, I hope not anyway. That's correct, Your Honor. But in this case, the reason that the case was remanded by the Board of Immigration Appeals was because the testimony of Mr. Mendoza's mother was not given. And so, and the judge fixed that. The judge found a date that she would be in the country, finds the time she's there, engages with her. So what's the problem? That is correct, Your Honor. Again, in this case, once the case was remanded, before the petitioner's mother testifies, in the transcript, there's a few parts of the transcript that show that the judge had already made his decision before the mother testified. If you're relying on the part where the judge wants statements about voluntary departure, it seems to me that that's just part of the record the judge needs to make, and there's no rigid marching order of issues. I mean, this is, if we get there, I'd like to hear your position on this. Besides that point, Your Honor, there's also other parts in the transcript. Specifically, the immigration judge asked Petitioner's Counsel what his position was on the case and stated, you appealed last time, and it's the same identical facts. This was before the petitioner's mother testified. A bit later, the immigration judge asked the government's attorney whether she would like to take a position on the case. Again, this was before the petitioner's mother testified. Even the immigration judge himself stated he was going to state his position. But it's actually the first thing you mentioned. As a matter of fact, correct, that other than adding the mother's testimony, this remand did not produce a lot of new testimony or evidence or documentation or other material from Mr. Mendoza-Solis. If it's objectively true that it was basically the same record the judge was being asked to look at again, and now going to be as supplemented by the mother, that's just a fact, isn't it? In my opinion, that's because the immigration judge took over the line of questioning. When did Mr. Mendoza-Solis, he was represented, right? Correct. You have to tell the judge if you want either time to gather evidence or you want to introduce evidence. I agree with that point, Your Honor, but the transcript shows that when the immigration judge questioned Mr. Mendoza, he had asked about 80 questions in total, and the petitioner's counsel only asked about 50 questions. The government attorney didn't ask any questions. Similarly, when the petitioner's mother was questioned, the government attorney did not ask any questions either. It was the immigration judge asking all the questions. He took over the role of the government attorney. But, you know, you can't have it both ways because at some point in the immigration statute and regulations, this is not your classic district court action where a full adversary system operates. The immigration judge has an independent responsibility to make sure the record gets properly developed, and that may entail asking questions. So unless there's something wrong with one or more of the questions, and you haven't told us about any question that was particularly off-base or offensive or, you know, inappropriate somehow, why does the count of questions matter? Because the immigration judge took over the entire line of questioning. The government attorney did not have to make any argument whatsoever. Did the immigration judge forbid the government attorney from doing so? No. No. And didn't forbid Mr. Mendoza Solis' attorney from doing so. It's just the judge had a lot of questions. Unless the judge said, okay, we're done, you know, no one else can say anything, I don't know. Why is that bad? Well, this court previously held in Rodriguez-Galicia v. Gonzalez that taking over the questioning so that a judge rather than the attorney elicits the testimony from the applicant constitutes reversible error. I think you need to look at the context. There have been cases where it's not just a count of the questions, but it's what's being said. If the judge is being tendentious, if the judge is being overtly partisan in some way or another, that would be a problem. But I haven't been told about any problem like that here. Were any of the questions inappropriate by the immigration judge? Specifically, no, Your Honor. None of the questions were inappropriate. Specifically, no. It was just overall in the context of the case. Well, it's not uncommon for IJs to make inquiry. You're just saying that the number of questions he made precluded examination by others? No, Your Honor. My argument is that the context as a whole that shows the immigration judge frustrated with this case specifically combined with the fact that the immigration judge took over the entire line of questioning, plus the government attorney not having to make any argument whatsoever or question the petitioner or his mother. Well, the government made its case when it was initially before the IJ, before it came back. That is true, Your Honor. So perhaps the judge is aware of the government's position through the prior proceedings. And I mean, it's hard to know what's in the mind of the government by not asking the questions, but I'm just suggesting that maybe the judge has heard from the government already through the earlier case. Well, to conclude, in my opinion, the immigration judge did not afford the petitioner a fair and full trial before a neutral immigration judge. A decision was made before all the facts were considered, and the immigration judge acted in the shoes of government counsel. We respectfully ask this honorable court to reverse and remand this issue back to the lower courts. Thank you. All right, thank you. We'll have a little rebuttal time if you want it. Mr. O'Malley. May it please the court, my name is Andrew O'Malley. I represent the Attorney General of the United States. This court should dismiss or otherwise deny the petition for review because petitioner failed to exhaust his administrative remedies with respect to the good moral character and continuous physical presence requirements. The court lacks jurisdiction over the agency's discretionary determination that he failed to show the requisite hardship for cancellation of removal, and the record does not support petitioner's contention that his proceedings were legally insufficient. Now, would you agree, though, I mean, I think what he's trying to say is that if the immigration judge really just turns into counsel for the government, then we don't have a proper administrative procedure. The judge, although entitled to develop the record, is supposed to be a neutral party, and so the judge can't just put on a cap as ICE or Department of Homeland Security or whatever. Well, the statute does require the immigration judge to interrogate witnesses, to question witnesses, and to develop those issues. I understand that, which I pointed out. But I'm saying if the immigration judge goes over the line and turns into counsel for the government, then we have a problem, don't we? Well, I'm not sure there's any place in the record here where the immigration judge turned into counsel for the government. But on the facts, but you'd agree as an abstract principle, even if it didn't happen here, that if we were to see a case where the immigration judge basically was DHS counsel, that there would need to be a new hearing. I imagine there would be situations I think the immigration judge's questioning would have to lead to that conclusion and would have to show some sort of bias or some sort of animus or some sort of prejudging of the case. That's definitely not the case here. And Petitioner's counsel points to nothing in the record that would suggest that that's the case here. Petitioner had a full opportunity to develop the record, present any evidence that he wanted to, and the immigration judge engaged in that process, questioning both Mr. Mendoza and his mother when she came up to testify. As I said, the statute says the immigration judge shall question the witnesses. That's what happened here. Petitioner shows nothing that was inappropriate. And, in fact, concedes there was nothing that was inappropriate here. Other than the IJ's comment that he's definitely not a happy camper that this case has returned to his desk. There were two comments like that, one when they were scheduling and one when it came back, and I think that's understandable. I don't know if it's advisable, but certainly I don't think there's any evidence here that that affected the immigration judge's decision. In fact, the only tangible evidence that he points to to say that it did affect the immigration judge's decision is the taking the steps to wrap up the hearing at the conclusion of his testimony. And you see when you look at the record, well, first of all, the immigration judge specifically set the hearing for a date when Mr. Mendoza's mother could testify, when she would be back from Mexico and able to testify if he wanted to call her. Opposing counsel said at the end of Mr. Mendoza's testimony that he had nothing further, and the immigration judge went into qualifying for voluntary departure and asking for summaries of the arguments. When Mr. Mendoza's counsel reminded the immigration judge, oh, we have the mother here who wants to testify, the immigration judge simply said, okay. And the mother came up and testified, went through full questioning, and even after she left the stand or however it functioned, we don't see it in the transcript, but the immigration judge called her back and asked her to clarify portions of her testimony that were relevant to the hardship determination, showing consideration of what she was saying. And beyond that, the immigration judge expressly stated that he made his decision after careful consideration of the record in its entirety. Now, that's easy to say, of course, right? They probably always say that. That is, but the immigration judge also followed that up with consideration of the mother's testimony and the decision, both in the statement of facts and in the hardship analysis. Now, it's important to note here, I think, that Mr. Mendoza's mother's testimony did not go to the continuous physical presence requirement, and it did not go to good moral character. No, it's just the hardship. She's talking about how much time she's living with the grandson and how much time with the various other people. That's exactly right. She didn't give us anything on the other two factors. And in any event, the board went in afterwards and looked at this issue de novo, the issue of hardship, and said, no, under de novo review, this petitioner did not establish exceptional and extremely unusual hardship to a qualifying relative, his mother. And that should really dispose of the matter here. Their claim on fundamental fairness and due process, which, of course, you have no due process right to discretionary relief from removal, and this court has found this to fall sort of under a legal question as to whether the regulatory provisions were provided for. Well, we encourage people to look at the regulatory provisions, which are actually quite detailed in terms of the process to which someone's entitled, because if you follow the regulations, you probably, I mean, I won't say you never would need to think of the Fifth Amendment, but it would be unusual. But even in that situation, you still have to show prejudice or that it affected the proceeding. And here the board reviewed de novo. They have not pointed to any facts that would have been shown had the immigration judge not been supposedly biased. And the board's decision on de novo review that it didn't meet a standard for cancellation of removal is really dispositive of this matter. Are there no further questions? I don't see any, so thank you very much. Thank you. And if you'd like to have the last word, Mr. Alnemer, you may. The first point I wanted to make was that the council's appeal to the Board of Immigration was focused on how the decision was made, not what the decision was. The appeal was for due process. It was not for the substance of the matter. And the second point I would like to make was in this court, in Rodriguez-Galicia v. Gonzalez, the court analyzed the frequency and the length of the immigration judge's interruptions in order to determine whether the immigration judge went beyond clarification of the applicant's testimony or was merely pointing the applicant in the right direction. In this case, I believe that the immigration judge went beyond clarification. Thank you. Thank you very much, then. Thank you. Thanks to both counsel. We'll take the case under advisement, and the court will be in recess. Thank you.